# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHENZHEN SALILAN TECHNOLOGY CO., LTD., FANGXINGWANG TRADING CO., LTD., and SHENZHEN XIWEI TECHNOLOGY CO., LTD. <br><br> *Plaintiffs*, <br><br> v. <br><br> SHARKNINJA OPERATING LLC <br><br> *Defendant.* | Case No. 1:25-cv-12447 <br><br> **JURY TRIAL DEMANDED** |
| SHARKNINJA OPERATING LLC and SHARKNINJA SALES COMPANY, <br><br> *Counterclaim-Plaintiffs*, <br><br> v. <br><br> SHENZHEN SALILAN TECHNOLOGY CO., LTD., FANGXINGWANG TRADING CO., LTD., and SHENZHEN XIWEI TECHNOLOGY CO., LTD. <br><br> *Counterclaim-Defendants.* | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS COUNTERCLAIMANTS' COUNTERCLAIMS UNDER RULE 12(B)(6)**

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ....................................................................................................1

II.  FACTUAL BACKGROUND ....................................................................................2

    A.   SharkNinja's Allegations Regarding the '629 Patent..........................................2

    B.   SharkNinja's Allegations Regarding the '028 Patent and '580 Patent .............3

III. LEGAL STANDARDS.............................................................................................4

    A.   Motion to Dismiss for Failure to State a Claim under Rule 12(b)(6) ...............4

    B.   Willful Infringement under 35 U.S.C. § 284. ...................................................5

    C.   Induced Infringement under 35 U.S.C. § 271(b) ...............................................6

    D.   Contributory Infringement under 35 U.S.C. § 271(c).........................................6

IV.  ARGUMENT.............................................................................................................7

    A.   The Counterclaims Fail to State Plausible Pre-Suit Claims of Induced Infringement, Contributory Infringement, and Willful Infringement Regarding the '629 Patent .................................................................................................7

        1.   The Counterclaims Fail to Allege that the August 25, 2025 Email Communication Serves as a Basis for Induced, Contributory, or Willful Infringement........................................................................................8

        2.   The Counterclaims Fail to Plausibly Allege Any Act of Direct Infringement Induced or Contributed to by Plaintiffs.........................10

    B.   The Counterclaims Fails to State Plausible Pre-Suit Claims of Induced Infringement, Contributory Infringement, and Willful Infringement Regarding the '028 Patent and '580 Patent ....................................................................12

        1.   The Counterclaims Fail to Rely on Patent Marking of the '028 and '580 Patents to Establish Pre-Suit Knowledge Supporting Indirect and Willful Infringement........................................................................................13

        2.   The Counterclaims Fail to Plausibly Allege Any Act of Direct Infringement Induced or Contributed to by Plaintiffs.........................15

V.   CONCLUSION ......................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Pages(s)**

Cases

*Addiction & Detoxification Inst. LLC v. Carpenter*,
    620 F. App'x 934 (Fed. Cir. 2015) ........................................................................14, 15, 19

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
    24 F.3d 178 (Fed. Cir. 1994) ...................................................................................16

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
    876 F.3d 1350 (Fed. Cir. 2017) ..............................................................................18

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
    950 F.3d 860 (Fed. Cir. 2020) ...........................................................................16, 17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................................4, 5, 9

*Bayer Healthcare LLC v. Baxalta Inc.*,
    989 F.3d 964 (Fed. Cir. 2021) ...................................................................................6

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007*)* .................................................................................................5

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
    859 F.3d 1352 (Fed. Cir. 2017) .......................................................................8, 14, 15, 19

*Commil USA, LLC v. Cisco Sys., Inc.*,
    575 U.S. 632 (2015) ....................................................................................8, 9, 10, 17

*Douglas v. Hirshon*,
    63 F.4th 49 (1st Cir. 2023) .......................................................................................4

*DSU Med. Corp. v. JMS Co.*,
    471 F.3d 1293 (Fed. Cir. 2006) .................................................................................7

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
    363 F.3d 1263 (Fed. Cir. 2004) ...........................................................................13, 19

*Echosens, S.A. v. E-Scopics S.A.S.*,
    772 F. Supp. 3d 147 (D. Mass. 2025) .......................................................................12

*Fujitsu, Ltd. v. Netgear, Inc.*,
    620 F.3d 1321 (Fed. Cir. 2010) .................................................................................8

*Global-Techs. Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011) ..........................................................................................7, 8, 16

*Halo Electronics, Inc. v. Pulse Electronics, Inc.*,
    579 U.S. 93 (2016) ........................................................................................6, 9, 10, 17

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
    681 F.3d 1323 (Fed. Cir. 2012) ................................................................. 12

*Innovative Memory Sys., Inc. v. Micron Tech., Inc.*,
    No. CV 14-1480-RGA, 2022 WL 4548644 (D. Del. Sept. 29, 2022) ............... 17

*Joy Techs., Inc. v. Flakt, Inc.*,
    6 F.3d 770 (Fed. Cir. 1993) ..................................................................... 13

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
    572 U.S. 915 (2014) ........................................................................... 12, 18

*Nike, Inc. v. Wal-Mart Stores, Inc.*,
    138 F.3d 1437 (Fed. Cir. 1998) .................................................................. 18

*Ocasio-Hernandez v. Fortuno-Burset*,
    640 F.3d 1 (1st Cir. 2011) .......................................................................... 5

*Peñalbert–Rosa v. Fortuño–Burset*,
    631 F.3d 592 (1st Cir.2011) ..................................................................... 5, 9

*Sanchez v. Pereira–Castillo*,
    590 F.3d 31 (1st Cir. 2009) ........................................................................ 5

*SiOnyx, LLC v. Hamamatsu Photonics K.K.*,
    330 F. Supp. 3d 574 (D. Mass. 2018) .......................................................... 10

*Skinner v. Switzer*,
    562 U.S. 521 (2011) .................................................................................. 5

*Takeda Pharms. U.S.A., Inc. v. West-Ward Pharm. Corp.*,
    785 F.3d 625 (Fed. Cir. 2015) ............................................................... 13, 19

*Trs. of Purdue Univ. v. Wolfspeed, Inc.*,
    620 F. Supp. 3d 393 (M.D.N.C. 2022) .......................................................... 6

*Vanda Pharm., Inc. v. West-Ward Pharm. Int'l Ltd.*,
    887 F.3d 1117 (Fed. Cir. 2018) .................................................................. 10

*Vita–Mix Corp. v. Basic Holding, Inc.*,
    581 F.3d 1317 (Fed. Cir. 2009) ................................................................... 7

*Zond, Inc. v. Fujitsu Semiconductor Ltd.*,
    990 F. Supp. 2d 50 (D. Mass. 2014) ............................................................. 7

Statutes

35 U.S.C. § 271(b) ......................................................................... passim

35 U.S.C. § 271(c) ....................................................................... 8, 12, 18

35 U.S.C. § 284 .................................................................................... 5

35 U.S.C. § 287 ........................................................................... passim

Rules

Fed. R. Civ. P. 12(b)(6) .......................................................................................................passim

## I.    INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiffs Shenzhen SaLilan Technology Co., Ltd., Shenzhen FanXingWang Trading Co., Ltd., and Shenzhen XiWei Technology Co., Ltd. (collectively, "Plaintiffs"), respectfully move to dismiss the Counterclaims of Counterclaimants SharkNinja Operating LLC and SharkNinja Sales Company (collectively, "SharkNinja") to the extent they seek recovery for:    (1) pre-suit induced infringement, (2) pre-suit contributory infringement, or (3) pre-suit willful infringement.

SharkNinja's Counterclaims attempt to plead pre-suit induced infringement, contributory infringement, and willful infringement for three patents—the '629, '028, and '580 Patents—without alleging the facts that the law requires. As to the '629 Patent, the Counterclaims point to a single August 25, 2025 email in which Plaintiffs sought clarification of SharkNinja's enforcement practices on Amazon. That communication, at most, reflects awareness of the existence of a patent and an effort to avoid conflict; it does not plausibly allege that Plaintiffs knew or believed their products infringed, nor that they took deliberate steps to encourage infringement. As to the '028 and '580 Patents, SharkNinja relies on patent marking of its SLUSHi product and the filing of its Counterclaims to supply knowledge. But marking under 35 U.S.C. § 287 provides, at most, constructive notice for damages—not the actual knowledge of infringement required to sustain pre-suit indirect or willful infringement.    Of course, the filing of the Counterclaims provides <u>no</u> notice of alleged pre-suit infringement.

The Counterclaims also fail for a separate, independent reason: they do not plausibly allege any underlying act of direct infringement by a third party that Plaintiffs supposedly induced or to which they contributed. Instead, SharkNinja offers only threadbare recitals— asserting inducement and contribution in conclusory terms, without facts showing specific intent, active steps to encourage infringement, or any identified direct infringer.

Because SharkNinja's allegations are conclusory, speculative, and devoid of the factual enhancement required by *Twombly* and *Iqbal*, the Court should dismiss the pre-suit claims for induced infringement, contributory infringement, and willful infringement as to the '629, '028, and '580 Patents under Rule 12(b)(6).

## II.    FACTUAL BACKGROUND

On September 3, 2025, Plaintiffs filed a Complaint against SharkNinja, asserting non-infringement over SharkNinja's U.S. Patent No. 12,279,629 (the "'629 Patent"). Dkt. 1 at ¶ 1. On October 10, 2025, SharkNinja filed its Answer to the Complaint and raised Counterclaims, asserting Plaintiff's infringement over the '629 Patent; U.S. Patent Nos. 12,285,028 (the "'028 Patent"); and D1,076,580 ("the '580 Patent") (collectively, the "Asserted Patents"). Dkt. 6, Counterclaims at ¶ 4. The Counterclaims claim that Plaintiffs directly infringe each of the Asserted Patents under 35 U.S.C. § 271(a) (*id.*, Counterclaims at ¶¶ 38, 51, 64), induce infringement of each of the Asserted Patents under 35 U.S.C. § 271(b) (*id.*, Counterclaims at ¶¶ 38, 42, 51, 55, 64, 67), and contribute to the infringement of each of the Asserted Patents under 35 U.S.C. § 271(c) (*id.*, Counterclaims at ¶¶ 40, 41, 53, 54, 66, 68). The Counterclaims accuse Plaintiffs of willfully infringing the Asserted Patents. *See id.*, Counterclaims at ¶¶ 46, 59, 72.

For the '629 Patent, the Counterclaims allege that Plaintiffs had knowledge of the patent "at least [on] August 25, 2025…, and [] on the filing of the Counterclaims in this Action." *See id.*, Counterclaims at ¶ 45. For the '028 Patent and the '580 Patent, the Counterclaims allege that Plaintiffs had knowledge of the patents "through the SharkNinja US Entities' marking of their SLUSHi product and the filing of these Counterclaims in this Action." *See id.*, Counterclaims ¶¶ 58, 71.

### A.    SharkNinja's Allegations Regarding the '629 Patent

The '629 Patent was filed on January 26, 2024, and issued on April 22, 2025. The Counterclaims allege that on August 25, 2025, Plaintiffs reached out to SharkNinja via email regarding "the '629 Patent and SharkNinja's enforcement efforts relating to the '629 Patent." *Id.*, Counterclaims at ¶ 33. The Counterclaims also alleges that Plaintiffs, thereby, "admitted to having knowledge of the '629 Patent at least of August 25, 2025, and believed that SharkNinja would potentially assert the '629 Patent against their Accused Products." *Id.* However, SharkNinja neither alleges nor can plausibly allege that Plaintiffs had pre-suit knowledge that their Accused Products infringed the '629 Patent. Plaintiffs' August 25, 2025 communication was limited to clarifying whether SharkNinja would improperly use the Amazon platform to remove Plaintiffs' products from sale, not to discussing or acknowledging any issue of patent infringement.

SharkNinja further makes only conclusory allegations that Plaintiffs induced retailers to sell the Accused Products in the United States (*id.*, Counterclaims at ¶¶ 38, 42) and contributed to infringement by promoting and/or selling the Accused Products to customers (*id.*, Counterclaims at ¶¶ 40, 41). However, SharkNinja fails to plead any factual basis showing that Plaintiffs knowingly induced or contributed to any retailer's or customer's use of the Accused Products in an infringing manner.

**B.    SharkNinja's Allegations Regarding the '028 Patent and '580 Patent**

SharkNinja's allegations that Plaintiffs had pre-suit knowledge of the '028 Patent and '580 Patent are identical. The '028 Patent was issued on April 29, 2025, and the '580 Patent was issued on September 2, 2025. The Counterclaims allege that Plaintiffs had knowledge of the '028 Patent and '580 Patent through "the SharkNinja US Entities' marking of their SLUSHi product and the filing of these Counterclaims in this Action." *Id.*, Counterclaims at ¶¶ 58, 71. However, SharkNinja fails to—and cannot—allege that Plaintiffs actually became aware of the '028 or '580 Patents through the SharkNinja U.S. Entities' product markings. Such

allegations amount to nothing more than constructive notice arising from SharkNinja's patent marking, which is legally insufficient to establish the requisite pre-suit knowledge for induced, contributory, or willful infringement.

SharkNinja further makes only conclusory allegations that Plaintiffs induced retailers to sell the Accused Products in the United States (*id*., Counterclaims at ¶¶ 51, 55, 64, 67) and contributed to infringement by promoting and/or selling the Accused Products to customers (*id*., Counterclaims at ¶¶ 53, 54, 66, 68). Moreover, SharkNinja fails to plead any factual basis showing that Plaintiffs knowingly induced or contributed to any retailer's or customer's use of the Accused Products in an infringing manner.

## III.    LEGAL STANDARDS

### A.    Motion to Dismiss for Failure to State a Claim under Rule 12(b)(6)

Rule 12(b)(6) requires that a complaint contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Douglas v. Hirshon*, 63 F.4th 49, 55 (1st Cir. 2023) (citations and internal quotation marks omitted). To meet this standard, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," based on "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id*. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. Nor does tendering "naked assertion[s]" devoid of "further factual enhancement." *Id*. In resolving a motion to dismiss for failure to state a claim, the question is "not whether [the plaintiff] will ultimately prevail, …but whether [the] complaint was sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011).

In evaluating the plausibility of a legal claim, a court should begin by identifying and

disregarding statements in the complaint that merely offer "'legal conclusion[s] couched as…fact[]'" or "[t]hreadbare recitals of the elements of a cause of action." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (quoting *Twombly*, 550 U.S. at 555). A plaintiff is not entitled to proceed perforce by virtue of allegations that merely parrot the elements of the cause of action. *See Sanchez v. Pereira–Castillo*, 590 F.3d 31, 49 (1st Cir. 2009) (disregarding as conclusory for a factual allegation that merely "[p]arrot[ed] our standard for supervisory liability in the context of Section 1983" in alleging that defendants had "failed to [supervise] with deliberate indifference and/or reckless disregard of Plaintiff's federally protected rights"). Some allegations, even if not alleging "ultimate legal conclusion", should also be disregarded because they are "so threadbare or speculative that they fail to cross the line between the conclusory and the factual." *Peñalbert–Rosa v. Fortuño–Burset*, 631 F.3d 592, 595 (1st Cir.2011).

### B.    Willful Infringement under 35 U.S.C. § 284

To allege willful infringement, the plaintiff must plausibly allege the "subjective willfulness of a patent infringer, intentional or knowing." *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 579 U.S. 93, 105 (2016). This requires a plaintiff to allege facts plausibly showing that "(1) the accused infringer must know of the asserted patents; and (2) the accused infringer must have had a specific intent to infringe at the time of the challenged conduct." *Trs. of Purdue Univ. v. Wolfspeed, Inc.*, 620 F. Supp. 3d 393, 403 (M.D.N.C. 2022) (quoting *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 987 (Fed. Cir. 2021)). Willful Infringement is only "justified where the infringer acted deliberately or willfully…but not where the infringement was not wanton and deliberate." *Halo*, 579 U.S. at 103. In other words, willful infringement requires more than knowledge of the asserted patent, it demands plausible allegations that the accused infringer acted despite that knowledge and the risk that its conduct constituted infringement. *See id*.

### C.    Induced Infringement under 35 U.S.C. § 271(b)

Similarly, to allege induced infringement, the plaintiff must plead specific facts sufficient to show that the accused infringer had actual knowledge of infringement by the induced party, or was willfully blind to the existence of such infringement. *Global-Techs. Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011) ("[I]nduced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement" or at least "willful blindness" to the likelihood of infringement.). A showing of willful blindness requires that "(1) [t]he defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *Global-Techs.*, 563 U.S. at 769.

Moreover, to establish inducement the plaintiff must show that the alleged inducer "knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent." *Vita–Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009) (citing *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304–05 (Fed. Cir. 2006) (*en banc in relevant part*)). Therefore, the threshold for liability requires a showing that "the alleged inducer must have had knowledge of the patent in question combined with an intent to cause the infringing acts." *Zond, Inc. v. Fujitsu Semiconductor Ltd.*, 990 F. Supp. 2d 50, 56 (D. Mass. 2014). Absent any identification of facts describing the alleged infringing conduct, a claim of induced infringement amounts to no more than a conclusory allegation and must be dismissed. *See Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1363 (Fed. Cir. 2017) (affirming dismissal where plaintiff failed to allege "specific intent and action" on the part of defendant to induce infringement of the asserted patent).

### D.    Contributory Infringement under 35 U.S.C. § 271(c)

"To establish contributory infringement, the patent owner must show…1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the

component has no substantial non-infringing uses, and 4) that the component is a material part of the invention." *Fujitsu, Ltd. v. Netgear, Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010). Moreover, "[l]ike induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015).

## IV.    ARGUMENT

### A.    The Counterclaims Fail to State Plausible Pre-Suit Claims of Induced Infringement, Contributory Infringement, and Willful Infringement Regarding the '629 Patent

Induced infringement, contributory infringement and willful infringement all require pleading (1) notice of an asserted patent at the time of the purportedly infringing conduct, and (2) notice of infringement by its conduct. *Global-Techs. Appliances*, 563 U.S. at 766 ("[I]nduced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement" or at least "willful blindness" to the likelihood of infringement.); *Commil USA*, 575 U.S. at 639 ("Like induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement."); *Halo*, 579 U.S. at 103 ("Willful Infringement is justified where the infringer acted deliberately or willfully…but not where the infringement was not wanton and deliberate.").

For the '629 Patent, SharkNinja alleges no facts showing that, pre-suit, Plaintiffs were knowingly or willfully blind to any alleged infringement. Indeed, the Counterclaims fail to identify any factual allegations that Plaintiffs held a subjective belief that their Accused Products infringed the '629 Patent, or that they took deliberate steps to avoid learning of such facts. At most, SharkNinja alleges that Plaintiffs had actual knowledge of the '629 Patent on August 25, 2025, and later became aware of SharkNinja's infringement allegations upon service of the Counterclaims. However, regardless of the form of alleged notice, factual contentions that suggest only pre-suit knowledge of the patent itself, rather than pre-suit

knowledge of infringement, are insufficient to state a plausible claim for pre-suit induced, contributory, or willful infringement. SharkNinja's "naked assertion" that Plaintiffs potentially had knowledge of the infringement is devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678.

Moreover, SharkNinja merely asserts that Plaintiffs induced or contributed to infringement by customers and retailers, without providing any supporting factual detail. Such statements are legal conclusions, not factual allegations, and should be disregarded. *Peñalbert–Rosa*, 631 F.3d at 595 (holding that some allegations, although not alleging "ultimate legal conclusion", should also be disregarded because they are "so threadbare or speculative that they fail to cross the line between the conclusory and the factual.").

### 1. The Counterclaims Fail to Allege that the August 25, 2025 Email Communication Serves as a Basis for Induced, Contributory, or Willful Infringement

For induced infringement, SharkNinja must establish that Plaintiffs "possessed specific intent to encourage another's infringement and not merely that [Plaintiffs] had knowledge of the acts alleged to constitute inducement." *Vanda Pharm., Inc. v. West-Ward Pharm. Int'l Ltd.*, 887 F.3d 1117, 1129 (Fed. Cir. 2018) (quoting *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (*en banc in relevant part*)). For contributory infringement, SharkNinja must show that Plaintiffs had "knowledge of the patent in suit and knowledge of patent infringement." *Commil USA*, 575 U.S. at 639. The type of conduct warranting a finding of willful infringement "has been variously described in cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Halo*, 579 U.S. at 104. Courts generally have reserved willful infringement only for "egregious cases of culpable behavior." *Id*. Moreover, knowledge of the asserted patent "is only one part of the knowledge required for culpable infringement—the accused infringer must also know that its acts constitute infringement." *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 330 F. Supp. 3d 574,

608 (D. Mass. 2018).

Under these standards, the August 25, 2025 email communication initiated by Plaintiffs cannot serve as a basis for indirect or willful infringement. At most, that correspondence reflects Plaintiffs' intent to request clarification from SharkNinja regarding its patent enforcement policies—not any admission or awareness of infringing conduct.

SharkNinja has long pursued an aggressive enforcement strategy by filing infringement complaints on Amazon's internal platforms to pressure competitors out of the marketplace. *See Foshan Macjerry Technology Co., Ltd. v. SharkNinja Operating LLC*, Case No. 2:25-cv-00954, ECF 1 ¶¶ 8, 10 (W.D. Wash. 2025) ("[SharkNinja] submitted a complaint of infringement of the '629 Patent to Amazon.com, Inc.," and thereby "Amazon sent a notice to Plaintiff stating that its Slushie Machine listing may be removed from the platform if Plaintiff does not address the patent infringement claim within three weeks…"); *Shenzhen Tao Yi An E-Commerce Co., Ltd. v. SharkNinja Operating LLC*, Case No. 3:25-cv-04656, ECF 1 ¶ 3 (N.D. Cal. 2025) ("[SharkNinja] has asserted a patent infringement claim against the Non-Infringing Slushy Machines to Amazon, causing Amazon to remove Plaintiff's listings for the Non-Infringing Slushy Machines on Amazon.com.").

Given this pattern of enforcement, Plaintiffs' August 25, 2025 email was a cautious and good-faith effort to clarify SharkNinja's patent enforcement intentions toward Amazon sellers. The communication was an invitation to resolve potential disputes amicably and to confirm the nonexistence of any actual infringement dispute or misunderstanding. SharkNinja's failure to respond to that inquiry ultimately compelled Plaintiffs to seek judicial intervention to clarify their rights to sell their products on Amazon without unwarranted interference.

Therefore, the August 25, 2025 communication demonstrates, at most, that Plaintiffs were aware of the existence of SharkNinja's '629 Patent and of SharkNinja's aggressive enforcement history—but it does not support any inference that Plaintiffs knew or believed

their Accused Products infringed that patent. *See Echosens, S.A. v. E-Scopics S.A.S.*, 772 F. Supp. 3d 147, 157 (D. Mass. 2025) (dismissing as speculative the allegation supporting direct infringement that the defendant "has continued marketing the Hepatoscope in the United States, recently announcing its upcoming attendance" at conferences, because such statements did not permit a reasonable inference that the defendant "demonstrated, sold, or offered to sell the Accused Product"). The email is thus irrelevant to establishing knowledge of infringing activity and cannot serve as a basis for induced, contributory, or willful infringement.

### 2.    The Counterclaims Fail to Plausibly Allege Any Act of Direct Infringement Induced or Contributed to by Plaintiffs

SharkNinja's Counterclaims fail to plausibly allege the requisite element of direct infringement by a third party induced by Plaintiffs. It is well-established that a claim for induced infringement under 35 U.S.C. § 271(b) and contributory infringement under 35 U.S.C. § 271(c) must be predicated upon plausible allegations of direct infringement by a third party. *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 920–21 (2014) ("[T]here can be no indirect infringement without direct infringement…. Inducement liability may arise 'if, but only if, [there is] …direct infringement.'"); *see also In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012) ("It is axiomatic that '[t]here can be no inducement or contributory infringement without an underlying act of direct infringement.'" (internal citation omitted)); *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004) ("Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement…"); *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed.Cir.1993) ("Liability for either active inducement of infringement or for contributory infringement is dependent upon the existence of direct infringement.").

Furthermore, allegations of indirect infringement must plausibly suggest that the defendant took active steps specifically intended to cause infringement by another. *Takeda*

*Pharms. U.S.A., Inc. v. West-Ward Pharm. Corp.*, 785 F.3d 625, 631 (Fed. Cir. 2015) (indirect infringement requires "active steps…taken to encourage direct infringement"). However, SharkNinja's allegations wholly omit any facts describing such active steps by Plaintiffs to encourage or facilitate direct infringement.

Specifically, SharkNinja's Counterclaims merely assert, without any factual support, that Plaintiffs induced retailers to sell the Accused Products in the United States (Dkt. 6, Counterclaims at ¶¶ 38, 42) and contributed to infringement by promoting and/or selling the Accused Products to customers (*id.*, Counterclaims at ¶¶ 40, 41). This conclusory statement does not satisfy the pleading requirements established by *Iqbal* and *Twombly*, which mandate that allegations of indirect infringement must, at least, provide sufficient factual content to permit a reasonable inference that the defendant actively encouraged specific acts of direct infringement by a third party. *See Cleveland Clinic Found.*, 859 F.3d at 1364 (affirming dismissal of induced infringement claim where the complaint failed to identify "specific intent and action" or allege facts describing their allegedly infringing conduct); *see also Addiction & Detoxification Inst. LLC v. Carpenter*, 620 F. App'x 934, 938 (Fed. Cir. 2015) (affirming dismissal of an induced infringement claim for failure to adequately plead inducement where no direct infringer was specifically identified and the allegations did not "allow a court to reasonably infer that Defendants had the specific intent to induce infringement.… Rather, the [complaint] simply recites the legal conclusion that Defendants acted with specific intent.").

*        *        *        *        *

In sum, SharkNinja's Counterclaims fail to meet the pleading standards required under *Twombly* and *Iqbal*. SharkNinja does not allege any facts establishing that Plaintiffs had pre-suit knowledge of infringement, possessed the specific intent necessary to induce infringement, or took deliberate actions contributing to another's infringing conduct. The August 25, 2025 email communication merely reflects Plaintiffs' good-faith effort to clarify SharkNinja's patent

enforcement practices and cannot plausibly support an inference of knowledge or willfulness. Nor do the Counterclaims identify any actual underlying act of direct infringement that could give rise to secondary liability.

Because SharkNinja's allegations are conclusory, speculative, and devoid of factual enhancement, its pre-suit claims for induced infringement, contributory infringement, and willful infringement with respect to the '629 Patent should be dismissed under Rule 12(b)(6).

### B. The Counterclaims Fail to State Plausible Pre-Suit Claims of Induced Infringement, Contributory Infringement, and Willful Infringement Regarding the '028 Patent and '580 Patent

For the '028 and '580 Patents, SharkNinja's allegations of indirect and willful infringement are limited to the assertion that Plaintiffs allegedly learned of these patents through "the SharkNinja U.S. Entities' marking of their SLUSHi product and the filing of these Counterclaims in this Action." *See* Dkt. 6, Counterclaims ¶¶ 58, 71. However, SharkNinja fails to—and cannot—allege that Plaintiffs actually became aware of either patent through the product markings on the SLUSHi product. At most, these allegations amount to constructive notice arising from SharkNinja's patent marking and the service of its Counterclaims, neither of which is sufficient to establish the pre-suit knowledge necessary to support claims of induced, contributory, or willful infringement.

Furthermore, SharkNinja makes only conclusory assertions that Plaintiffs induced retailers to sell the Accused Products in the United States (*see id.* ¶¶ 51, 55, 64, 67) and contributed to infringement by promoting and/or selling the Accused Products to customers (*see id.* ¶¶ 53, 54, 66, 68). Yet SharkNinja fails to plead any facts showing that Plaintiffs knowingly induced or contributed to any retailer's or customer's use of the Accused Products in an infringing manner. Such threadbare allegations, devoid of factual enhancement, do not satisfy the plausibility standard under *Twombly* and *Iqbal*. *See Cleveland Clinic Found*, 859

F.3d at 1364 (affirming dismissal of induced infringement claim lacking factual allegations of "specific intent and action"); *Addiction & Detoxification Inst.*, 620 F. App'x at 938 (Fed. Cir. 2015) (affirming dismissal of an induced infringement claim because "the [complaint] simply recites the legal conclusion that Defendants acted with specific intent.").

> 1. **The Counterclaims Fail to Rely on Patent Marking of the '028 and '580 Patents to Establish Pre-Suit Knowledge Supporting Indirect and Willful Infringement**

Patent marking under § 287 provides at most constructive notice for damages and does not satisfy the actual knowledge requirement that must be pleaded for pre-suit indirect or willful infringement. The Counterclaims' reliance on marking of the '028 and '580 Patents to establish pre-suit knowledge supporting indirect and willful infringement is therefore speculative and insufficient.

First, patent marking only gives constructive notice, without any implication of the alleged infringer's actual knowledge of infringement. As the Federal Circuit has explained, the notice requirement of § 287 is satisfied "either by providing constructive notice—i.e., marking its products—or by providing actual notice to an alleged infringer." *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 950 F.3d 860, 864 (Fed. Cir. 2020). "Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device." *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994). Compared to actual notice, which requires "affirmative communication of a specific charge of infringement," patent marking can only amount to constructive notice. *Id*. Constructive notice under § 287 is not the standard for establishing the knowledge element required for induced infringement or willful infringement. *See Global-Tech Appliances*, 563 U.S. at 766 ("[I]nduced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement" or at least "willful blindness" to the likelihood of infringement.);

13

*Commil USA*, 575 U.S. at 639 ("Like induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement."); *Halo*, 579 U.S. at 104 (holding that the type of conduct warranting a finding of willful infringement "has been variously described in cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate."). SharkNinja fails to allege how the constructive notice from patent marking under § 287 could substitute for the actual knowledge required for indirect or willful infringement.

Second, patent marking is a precondition to damages, not a basis for establishing actual knowledge of infringement. *Arctic Cat*, 950 F.3d at 865 ("The [Section 287] thus prohibits a patentee from receiving any damages in a subsequent action for infringement after a failure to mark."); *Innovative Memory Sys., Inc. v. Micron Tech., Inc.*, No. CV 14-1480-RGA, 2022 WL 4548644, at *14 (D. Del. Sept. 29, 2022) ("Because the marking requirement of § 287 is a condition of damages."). SharkNinja does not explain how a statutory mechanism serving as a limit on damages satisfies the standard for pleading the knowledge element of indirect or willful infringement.

Third, the purpose of § 287's marking requirement is not to establish an infringer's knowledge of infringement but rather is a vehicle for: " (1) helping to avoid innocent infringement; (2) encouraging patentees to give public notice that the article is patented; and (3) aiding the public to identify whether an article is patented." *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017) (citing *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1443 (Fed. Cir. 1998)). None of these objectives supports the proposition that marking can substitute for actual knowledge of infringement in a claim for indirect or willful infringement.

As such, § 287 patent marking serves only as a mechanism for providing constructive notice for purposes of recovering damages and cannot substitute for the actual knowledge of

infringement required to plead pre-suit indirect or willful infringement. The Counterclaims' reliance on product marking of the '028 and '580 Patents to establish pre-suit knowledge is therefore legally insufficient.

### 2. The Counterclaims Fail to Plausibly Allege Any Act of Direct Infringement Induced or Contributed to by Plaintiffs

As with the '629 Patent, SharkNinja's Counterclaims also fail to plausibly allege any underlying act of direct infringement by a third party induced or contributed to by Plaintiffs regarding the claims for the '028 and '580 Patents. The claims of induced infringement under 35 U.S.C. § 271(b) and contributory infringement under § 271(c) must rest upon a plausible allegation of direct infringement by another. *See Limelight Networks*, 572 U.S. at 920–21 ("There can be no indirect infringement without direct infringement."); *Dynacore Holdings*, 363 F.3d at 1272.

SharkNinja merely asserts, without factual support, that Plaintiffs induced retailers to sell the Accused Products in the United States (Dkt. 6, Counterclaims ¶¶ 51, 55, 64, 67) and contributed to infringement by promoting and/or selling the Accused Products to customers (*id*. ¶¶ 53, 54, 66, 68). These allegations lack any factual content showing that Plaintiffs took active steps specifically intended to cause infringement by another. *See Takeda Pharms. U.S.A.*, 785 F.3d at 631 (indirect infringement requires "active steps…taken to encourage direct infringement"). Such threadbare assertions fail the plausibility standard under Twombly and Iqbal and mirror those rejected in *Cleveland Clinic Found.*, 859 F.3d at 1364, and *Addiction & Detoxification Inst.*, 620 F. App'x at 938.

*        *        *        *        *

In sum, because SharkNinja's allegations rest entirely on constructive notice from patent marking and conclusory assertions of inducement and contribution, they do not plausibly allege the elements necessary to sustain pre-suit claims of induced, contributory, or willful infringement. Accordingly, SharkNinja's pre-suit claims concerning the '028 and '580 Patents

should be dismissed under Rule 12(b)(6).

## V.    CONCLUSION

For the foregoing reasons, SharkNinja's Counterclaims fail to meet the pleading standards required under Twombly and Iqbal. SharkNinja does not allege any facts establishing that Plaintiffs had pre-suit knowledge of infringement, possessed the specific intent necessary to induce infringement, or took deliberate actions contributing to another's infringing conduct. The alleged pre-suit knowledge based on the August 25, 2025 email communication and on patent marking of the SLUSHi product amounts to nothing more than constructive notice, which cannot satisfy the actual knowledge standard required to plead induced, contributory, or willful infringement.

Furthermore, the Counterclaims fail to identify any underlying act of direct infringement by a third party induced or contributed to by Plaintiffs. Without plausible factual allegations showing direct infringement or specific intent, SharkNinja's claims are merely conclusory and speculative.

Accordingly, Plaintiffs respectfully request that the Court dismiss SharkNinja's pre-suit claims for induced infringement, contributory infringement, and willful infringement with respect to the '629, '028, and '580 Patents under Federal Rule of Civil Procedure 12(b)(6).

Dated: November 14, 2025                Respectfully submitted,

*/s/ Tianqin Zhao*
Tianqin Zhao (DC Bar No. 90027862)
*pro hac vice*
YOUNGZEAL LLP
9355 John W. Elliott Dr., STE 25555,
Frisco, Texas 75033
Telephone: (929) 290-2088
zhao@yzlaw.com

Thomas E. Kenney (BBO No. 561590)
Pierce & Mandell, P.C.
11 Beacon Street, Suite 800
Boston, MA 02108
Telephone: (617) 720-2444
Facsimile: (617) 720-3693
tom@piercemandell.com


Fan Liang (CA Bar No. 303031) *pro hac vice*
Zhiyu Liang (CA Bar No. 357770) *pro hac vice*
**ANJIE BROAD LAW FIRM**
No. 19 Dongfangdonglu Chaoyang
19/F Twr D1 Diplomacy Ofc. Bldg.
Beijing 100600, China
alex_liang@anjielaw.com
liangzhiyu@anjielaw.com

*Attorneys for Plaintiffs Shenzhen SaLilan Technology Co., Ltd., FangXingWang Trading Co., Ltd., and Shenzhen Xiwei Technology Co., Ltd.*

17

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed with the Clerk of the

Court using the CM/ECF system on November 14, 2025, and a copy of the foregoing will

be served upon counsel of record by the Court's ECF system.

/s/ *Tianqin Zhao*

Tianqin Zhao